stated: "[options backdating] is behavior that, to put it bluntly, is disgusting and repulsive. It is behavior that ignores the concept of an 'honest day's work for an honest day's pay' and replaces it with a phrase that we hear all too often today, 'I'm going to get mine.' . . . [S]hareholders and rank-and-file employees were ripped off by senior executives who rigged stock option programs – through a process called 'back-dating' – to further enrich themselves. And as we have found far too often in corporate scandals of recent years, boards of directors were either asleep at the switch, or in some cases, willing accomplices themselves. . . ."

118.    Further, at the hearing, SEC Christopher Cox, stated, "[r]ather obviously, this fact pattern [of backdating options] results in a violation of the SEC's disclosure rules, a violation of accounting rules, and also a violation of the tax laws." The Commissioner of the IRS Mark Everson agreed and further stated, "Picking a date on which the stock price was low in comparison with the current price gives the employee the largest potential for gain on the option and makes it possible for the employee to benefit from corporate performance that occurred before the option was granted."

119.    In his statement before the committee, Deputy Attorney General Paul J. McNulty described the practice of stock option backdating "as a brazen abuse of corporate power to artificially inflate the salaries of corporate wrongdoers at the expense of shareholders," and said "for some of those companies that have now disclosed backdated grants, corporate reputations have been tarnished and shareholder value has diminished substantially. . .."

120.    In addition to the foregoing, a recent academic study revealed that outside directors of companies were also benefiting from backdating and were recipients of manipulated stock option grants, as detailed in *The Wall Street Journal* article published on December 18, 2006:

A new academic study suggests that many outside directors received manipulated stock-option grants, a finding that may help explain why the practice of options backdating wasn't stopped by the boards of some companies.

The statistical study, which names no individuals or firms, estimates that 1,400 outside directors at 460 companies received questionable option grants, suggesting the widespread practice extended well beyond the executive suite.

The study is notable because it suggests that outside, or independent, directors -- who are supposed to play a special role safeguarding against cozy board relationships with management -- may have been co-opted in options backdating by receiving manipulated grants themselves. The New York Stock Exchange requires that a majority of board seats, and all compensation- and audit-committee members, be independent . . ..

The evidence "contributes to understanding the possible factors that led to or enabled manipulation to occur," states the unpublished study, which was conducted by professors at Harvard and Cornell universities and the French business school Instead . . ..

The new study examined nearly 29,000 option grants awarded to outside directors at 6,577 firms between 1996 and 2005. It found that 9% of the grants fell on days when the stock price was equal to a monthly low. A random selection would lead to about 5% of grants being awarded at monthly lows. In addition, 3.8% of the grants were awarded when the share price was at the lowest price of the calendar quarter, also higher than would be expected based on random selection . . ..

## Cirrus's Internal Investigation, Admissions and SEC Investigation

121.   On October 23, 2006, Cirrus announced that the Company had formed a Special Committee of the Board to conduct a detailed review of Cirrus's historical stock option grant practices. Specifically, the Company stated, in relevant part, the following:

Cirrus Logic Inc. today announced that it is voluntarily reviewing its historical stock option granting practices and related accounting matters. In September 2006, Cirrus Logic, at the direction of the Audit Committee of the company's Board of Directors, performed an initial internal review of selected stock option grants. In the course of that review, the company discovered information that raises potential questions about the measurement dates used to account for certain stock option grants. At the recommendation of the Audit Committee, a Special Committee of the Board of

Directors has been formed to conduct a more detailed review of past stock option grants, the timing of those grants and related accounting matters. The Special Committee has engaged independent outside counsel to conduct this review and hopes to complete the review as quickly as possible.

Cirrus Logic is not currently able to determine whether adjustments will be required to historical financial statements. Any such adjustments, if required, would likely consist of non-cash items. Cirrus Logic will provide a public statement regarding the conclusions reached in its voluntary review after the review is completed.

122.   On October 30, 2006, Cirrus filed Form 8-K with the SEC in which the Company revealed that the SEC was conducting an informal investigation into the Company's historical stock option grant practices.  Specifically, the Company stated:

On October 27, 2006, Cirrus Logic, Inc. (the "Company") received a letter from the Division of Enforcement of the United States Securities and Exchange Commission (the "SEC") indicating that the SEC is conducting an informal investigation into the Company's historical stock option practices. The SEC has advised the Company that the investigation should not be construed as either an indication by the SEC that any violations of law have occurred, or as an adverse reflection upon any person, entity or security.

As previously disclosed, a special committee of the Company's Board of Directors is currently conducting a voluntary review of the Company's historical stock option granting practices and related accounting matters. The Company intends to cooperate fully with SEC's informal investigation.

123.   On November 15, 2006, Cirrus announced that the Company had received a notice of noncompliance from NASDAQ due to the Company's failure to timely file its quarterly report.  Specifically, the Company stated:

Cirrus Logic Inc. today announced that it received on November 10, 2006 a Nasdaq Staff Determination letter stating that the company is not in compliance with the continued listing requirements of Nasdaq Marketplace Rule 4310(c)(14) because it has not timely filed with the Securities and Exchange Commission (the "SEC") its Quarterly Report on Form 10-Q for the quarter

49

ended Sept. 23, 2006. The company plans to request a hearing before a Nasdaq Listing Qualifications Panel (the "Panel") to review the Staff Determination. Pending a decision by the Panel, shares of Cirrus Logic's common stock will continue to be listed on the Nasdaq Global Select Market.

As previously announced, Cirrus Logic's Board of Directors has formed a Special Committee to voluntarily review the company's historical stock option granting practices and related accounting matters. Although the timeframe for completing the Special Committee's internal review is uncertain, Cirrus Logic remains committed to resolving these issues as quickly as possible. The company plans to file with the SEC its Form 10-Q for the second quarter of fiscal year 2007 as soon as practicable following the conclusion of the Special Committee's review.

124.    On January 31, 2007, Cirrus announced partial financial results for the third quarter of fiscal 2007 and updated the investigation of the special committee into the Company's historical option grant practices.  Specifically, the Company stated:

As previously announced, the Board of Directors of Cirrus Logic formed a special committee to voluntarily review the company's historical stock option granting practices and related accounting matters. Since the review remains on-going, the company has limited the scope of its third quarter financial information released today to the selected preliminary financial information provided in this release. All preliminary results are subject to adjustment. The company does not expect to be in a position to announce final financial results for the second or third fiscal quarters until the Special Committee has completed its review. Due to the on-going review, it appears unlikely that the company will be able to file its Form 10-Q with the SEC for the third fiscal quarter by the Feb. 8, 2007, deadline. Please refer to the company's Form 8-K filed with the SEC on Oct. 23, 2006, for further information about the review.

125.    Also on January 31, 2007, Cirrus announced that NASDAQ had granted the Company's request for continued listing.  Specifically, the Company stated:

Cirrus Logic Inc. today announced that it received written notification on Jan. 26, 2007, from the staff of the Nasdaq Stock Market stating that the Nasdaq Listing Qualifications Panel has granted the company's request for continued listing on The Nasdaq Global Select Market. Cirrus Logic's continued listing is subject to

the conditions that the company provides Nasdaq with certain information regarding the results of the previously announced investigation by a special committee of the company's board of directors on or about March 1, 2007, and files any delinquent periodic reports, and any required restatements, by April 18, 2007. As previously announced on Nov. 15, 2006, Nasdaq determined that the company is not in compliance with the continued listing requirements of Nasdaq Marketplace Rule 4310(c)(14) because it has not filed its Quarterly Report on Form 10-Q for the quarter ended Sept. 23, 2006.

126.    On March 2, 2007, Cirrus announced the results of its internal investigation and *admitted* that historical stock option grants were improperly priced.  Cirrus also reported that, due to the improper grant pricing, it expected to restate financial results to reflect additional compensation expenses in the range of $22 to $24 million.  Specifically, the Company stated:

> Cirrus Logic Inc. today announced that a Special Committee of the Company's Board of Directors has reported its principal findings to the Board of Directors relating to its investigation into the Company's historical stock option granting practices and related accounting. The Special Committee conducted its investigation with the assistance of outside independent legal counsel and independent forensic accounting consultants.
>
> Based on the report of the Special Committee and on management's preliminary conclusions and recommendations with respect to accounting measurement dates for certain stock options granted between 1997 and 2006, *the Board of Directors has concluded that the accounting measurement dates for certain stock options granted between January 1, 1997, and December 31, 2005, differ from the recorded measurement dates previously used for such awards. The Company therefore expects to record material non-cash charges for stock-based compensation expenses in certain reporting periods.* The Company believes that these charges will be material and expects to restate its financial statements for fiscal years 2001 through 2006 and for the first quarter of fiscal year 2007. *The Company currently estimates that the cumulative additional non-cash stock-based compensation expense to be recorded is likely to be in the range of $22 to $24 million.* Accordingly, based on the findings of the Special Committee, and the recommendations of management and the Audit Committee, the Board of Directors has concluded that the financial statements, related notes and selected financial data and all financial press releases and similar communications issued by

the Company and the related reports of the independent registered public accounting firm relating to fiscal periods 2001 through 2006 and the first fiscal quarter of 2007, should no longer be relied upon. (Emphasis added.)

127.    On March 7, 2007, Cirrus issued a further update regarding its internal investigation, and announced that: "based on the evidence developed in the investigation that certain executive officers had knowledge of and participated in the selection of three grant dates for broad-based employee option grants in the 2000 through 2002 timeframe, either with hindsight or prior to completing the formal approval process." Additionally, the Company revealed that its internal investigation identified "three grant dates prior to 2003 on which three management-level employees received new-hire option grants on dates other than when they began rendering services to the Company." The Company also reported that, due to his involvement with improper historical grant practices, Defendant French had resigned as the Company's President, CEO and as a director.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

128.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties, unjust enrichment, statutory violations and other violations of law.

129.    Plaintiff is an owner of Cirrus common stock and was an owner of Cirrus common stock at all times relevant hereto.

130.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

131.    As a result of the facts set forth herein, Plaintiff has not made any demand on the Cirrus Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an

independent and disinterested decision to institute and vigorously prosecute this action.

132.   The Cirrus Board currently consists of six members: defendants Hackworth, Patil,

Sherman, Guzy, Smith and Rhines.  All of these directors are incapable of independently and

disinterestedly considering a demand to commence and vigorously prosecute this action:

      a.     Patil, because as a recipient of backdated options he is directly interested in the improperly backdated stock option grants complained of herein. Also, as a director at all relevant times hereto, he knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings as alleged herein and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.   Accordingly, Patil is incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action against the Individual Defendants;

      b.     Sherman, because as a member of the Compensation Committee at relevant times hereto, Sherman knowingly and deliberately backdated stock option grants, as alleged herein, and as a director at relevant times hereto, he knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings as alleged herein and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Sherman has demonstrated that he is unable or unwilling to act independently of the Individual Defendants;

      c.     Guzy, because as a member of the Audit Committee at relevant times hereto, he knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings as alleged herein and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Additionally, as a member of the Compensation Committee at relevant times hereto, Guzy knowingly and deliberately backdated stock option grants, as alleged herein.  Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Guzy has demonstrated that he is unable or unwilling to act independently of the Option Recipient Defendants.  Also, as a current member of the Audit Committee, he has not commenced any actions against any of the Individual Defendants despite convincing evidence of misconduct against

the Company. It would be unreasonable to expect Guzy to independently and disinterestedly respond to the claims in this Complaint;

d.   Smith, because as a member of the Audit Committee at all relevant times hereto, he knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings as alleged herein and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein. Additionally, as a member of the Compensation Committee at all relevant times hereto, Smith knowingly and deliberately backdated stock option grants, as alleged herein. Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Smith has demonstrated that he is unable or unwilling to act independently of the Option Recipient Defendants. Also, as a current member of the Audit Committee, he has not commenced any actions against any of the Individual Defendants despite convincing evidence of misconduct against the Company. It would be unreasonable to expect Smith to independently and disinterestedly respond to the claims in this Complaint;

e.   Rhines, because as a member of the Audit Committee at relevant times hereto, he knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings as alleged herein and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein. Additionally, as a member of the Compensation Committee at all relevant times hereto, Rhines knowingly and deliberately backdated stock option grants, as alleged herein. Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Rhines has demonstrated that he is unable or unwilling to act independently of the Option Recipient Defendants. Also, as a current member of the Audit Committee, he has not commenced any actions against any of the Individual Defendants despite convincing evidence of misconduct against the Company. It would be unreasonable to expect Rhines to independently and disinterestedly respond to the claims in this Complaint; and

f.   Hackworth, because his current principal professional occupation is his positions as Acting President and CEO of the Company. In this position, Hackworth stands to earn hundreds of thousands of dollars in annual salary, bonuses, and other compensation, all of which must be approved by defendants Sherman, Rhines and Smith, who are currently members of the Compensation Committee. Also, as a member of the Compensation Committee at relevant times hereto, Hackworth knowingly and deliberately backdated stock option grants, as alleged herein, and as a director at all relevant times hereto, he knowingly and deliberately

participated in and approved the filing of false financial statements and other false SEC filings as alleged herein and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein. Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Hackworth has demonstrated that he is unable or unwilling to act independently of the Individual Defendants.

133.    Defendants Hackworth, Patil, Sherman, Guzy, Rhines and Smith's positions during the relevant period are summarized in the table below:

| Director | Recipient of Backdated Options | Current Executive Officer | Member of the Compensation Committee During the Relevant Period | Member of the Audit Committee During the Relevant Period | Approved and Signed False Financial Statements |
|---|---|---|---|---|---|
| Hackworth | | x | x | | x |
| Patil | x | | | | x |
| Sherman | | | x | | x |
| Guzy | | | x | x | x |
| Rhines | | | x | x | x |
| Smith | | | x | x | x |

134.    Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment. As represented in Cirrus's proxy statements, stock option grants were "designed to align the interests of the executive officer with those of the stockholders and provide each individual with a significant incentive to manage the Company from the perspective of an owner with an equity stake in the business.." However, by granting stock options to the Option Recipient Defendants with backdated exercise prices, the Individual Defendants undermined the purpose of the stock option plans by awarding employees compensation that had intrinsic value regardless of Cirrus's performance. In effect, this practice was nothing more than secret handouts to executives and employees at the expense of unsuspecting shareholders and the Company.

135.    The Individual Defendants could have achieved the stated purposes of "align[ing] the interests of the executive officer with those of the stockholders and provid[ing] each individual with a significant incentive to manage the Company from the perspective of an owner with an equity stake in the business" by granting those employees additional stock options under their incentive plans, or by granting stock options at a price less than the fair market value on the date of the grant and simply disclosing and expensing these grants.   Instead, the Individual Defendants backdated stock option grants in violation of the 1996 Plan and improperly reported these grants in their financial disclosures to improve their bottom line.

136.    The practice of backdating stock options cannot be a valid exercise of business judgment because it has subjected Cirrus to potentially massive liability.  Cirrus will likely suffer tax liabilities for the additional compensation it may have to expense, and it has tarnished its reputation in the investment community through this deliberate and calculated conduct.

## COUNT I

### Against the Individual Defendants for

### Violations of § 10(b) and Rule 10b-5 of the Exchange Act

137.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

138.    Throughout the relevant period, the Individual Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

139.   The Individual Defendants, as top executive officers and/or directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as officers and/or directors of the Company, each of the Individual Defendants was able to and did control the conduct complained of herein.

140.   The Individual Defendants acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were among the senior management and directors of the Company and were therefore directly responsible for the fraud alleged herein.

141.   The Company relied upon the Individual Defendants' fraud in granting the Individual Defendants options to purchase shares of the Company's common stock, as alleged herein.

142.   As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company will be required to incur, the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant, and costs and expenses that have been and will continue to be incurred in connection with the Company's internal investigation and the SEC investigation of the Company.

## COUNT II

### Against the Individual Defendants for

### Violations of §14(a) of the Exchange Act

143.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

144.   Rule 14-A-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14-A-9.

145.   The proxy statements described herein violated §14(a) and Rule 14-A-9 because they omitted material facts, including the fact that the Individual Defendants were causing the Company to engage in an option backdating scheme, a fact which the Individual Defendants were aware of and participated in from at least 1998 to 2002.

146.   In the exercise of reasonable care, the Individual Defendants should have known that the proxy statements were materially false and misleading.

147.   The misrepresentation and omissions in the proxy statements were material.  The proxy statements were an essential link in the accomplishment of the continuation of the Individual Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies.

148.   The Company was damaged as a result of the material misrepresentations and omissions in the proxy statements.

## COUNT III

### Against the Individual Defendants

### for Violations of §20(a) of the Exchange Act

149.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

150.    The Individual Defendants, by virtue of their positions with the Company and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of the Company within the meaning of §20(a) of the Exchange Act.  They had the power and influence and exercised the same to cause the Company to engage in the illegal conduct and practices complained of herein.

## COUNT IV

### Against the Individual Defendants for Accounting

151.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

152.    As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to, among other things, refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

153.    As alleged in detail herein, the Individual Defendants breached their fiduciary duties by, among other things, engaging in a scheme to grant backdated stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct.

154.   The Individual Defendants possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants.

155.   As a result of the Individual Defendants' misconduct, the Company has been damaged financially and is entitled to a recovery as a result thereof.

156.   Plaintiff demands an accounting be made of all stock option grants made to any of the Option Recipient Defendants, including, but not limited to, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the dates the options were exercised, as well as the disposition of any proceeds received by any of the Option Recipient Defendants via sale or other exercise of the grants.

**COUNT V**

**Against the Individual Defendants for**

**Breach of Fiduciary Duty and/or Aiding and Abetting**

157.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

158.   As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to, among other things, refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

159.   As alleged in detail herein, the Individual Defendants breached their fiduciary duties by, among other things, engaging in a scheme to grant backdated stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct.

160.    In breach of their fiduciary duties of loyalty and good faith, the Individual Defendants agreed to and did participate with and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets to themselves and/or other Company insiders.

161.    The Individual Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Option Recipient Defendants at the expense of the Company.

162.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company will be required to incur, the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant, and costs and expenses incurred in connection with the Company's internal investigation and the SEC investigation of the Company.

## COUNT VI

### Against the Option Recipient Defendants for

### Unjust Enrichment

163.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

164.    The Option Recipient Defendants were unjustly enriched by their receipt and retention of backdated stock option grants and the proceeds they received through exercising

backdated stock options, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

165.    To remedy the Option Recipient Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

**COUNT VII**

**Against the Option Recipient Defendants for**

**Rescission**

166.    Plaintiff incorporate by reference and realleges each and every allegation set forth above, as though fully set forth herein.

167.    As a result of the acts alleged herein, the stock option contracts between the Option Recipient Defendants and the Company entered into during the relevant period were obtained through the Individual Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the 1996 Plan.

168.    All contracts which provide for stock option grants to these Option Recipient Defendants and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' misconduct;

B.     Ordering the Option Recipient Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized, and imposing a constructive trust thereover;

C.     Granting appropriate equitable relief to remedy the Individual Defendants' breaches of fiduciary duties;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: March 19, 2007

**Attorneys in Charge:**
**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Lee D. Rudy
Michael C. Wagner
Alison K. Clark
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

**Local Co-Counsel in the Western District:**
**SMITH, ROBERTSON, ELLIOTT, GLEN,**
**KLEIN & BELL, L.L.P.**

Michael Klein
Texas State Bar No.  11563200
email:  mklein@smith-robertson.com
221 West Sixth Street, Suite 1100
Austin, TX 78701
Telephone:  (512) 225-5800
Facsimile:  (512) 225-5838
**Attorneys for Plaintiff**

## VERIFICATION

I, Vladimir Gusinsky, hereby verify that I have authorized the filing of the attached Complaint, that I have reviewed the Complaint, and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

DATE: _3/14/07_

_____
VLADIMIR GUSINSKY

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET A07CA212 SS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Vladimir Gusinsky, Derivatively on Behalf of Nominal Defendant Cirrus Logic, Inc.

## DEFENDANTS

David D. French, et al., Defendants and
Cirrus Logic, Inc., Nominal Defendant

**(b)** County of Residence of First Listed Plaintiff   Cook County, Illinois
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See Attachment to Civil Cover Sheet

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                and One Box for Defendant)

|                                                        | PTF | DEF |                                                          | PTF | DEF |
|--------------------------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State                                  | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                               | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country                | ☐ 3 | ☐ 3 | Foreign Nation                                           | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC sec. 78a et seq. (Securities Exchange Act of 1934)

Brief description of cause:
Shareholder Derivative Action; violations of secs. 10(b), 14(a) and 20(a) of Securities Exchange Act of 1934

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

March 19, 2007

SIGNATURE OF ATTORNEY OF RECORD

Michael Klein

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## ATTACHMENT TO CIVIL COVER SHEET

### Gusinsky v. David D. French, et al. v. Cirrus Logic, Inc.

1(c)    Plaintiffs' Attorneys (Firm Name, Address, and Telephone Number)

Michael Klein
Smith, Robertson, Elliott, Glen, Klein & Bell, L.L.P.
221 W. 6th St., Suite 1100
Austin, TX  78701
512.225.5800
512.225.5838 – facsimile
mklein@smith-robertson.com

Lee D. Rudy
Michael C. Wagneer
Alison K. Clark
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA  19087
610.667.7706
610.667.7056 - facsimile

AO82
(Rev. 4/90)

ORIGINAL                      405504

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**
**for the**
**WESTERN DISTRICT OF TEXAS**
at _____ *Austin*

RECEIVED FROM   *Smith Robertson Elliott*
*221 W. 6th # 1100*
*Austin TX 78701*

| Fund | | ACCOUNT | AMOUNT |
|------|--|---------|--------|
| 6855XX | Deposit Funds | 086900 | 60 00 |
| 604700 | Registry Funds | 510000 | 190 00 |
| | General and Special Funds | | |
| 508800 | Immigration Fees | 086400 | 100 00 |
| 085000 | Attorney Admission Fees | | |
| 086900 | Filing Fees | TOTAL | 350.00 |
| 322340 | Sale of Publications | | |
| 322350 | Copy Fees | Case Number or Other Reference | |
| 322360 | Miscellaneous Fees | 1:07-CV-212 | |
| 143500 | Interest | | |
| 322380 | Recoveries of Court Costs | | |
| 322386 | Restitution to U.S. Government | *New case* | |
| 121000 | Conscience Fund | *case* | |
| 129900 | Gifts | | |
| 504100 | Crime Victims Fund | | |
| 613300 | Unclaimed Monies | *Guransky v. French* | |
| 510000 | Civil Filing Fee (½) | | |
| 510100 | Registry Fee | | |

$ Checks and drafts are accepted subject to col-
lection and full credit will only be given when the
check or draft has been accepted by the financial
institution on which it was drawn. *9428*

| DATE | Cash | Check | M.O. | Credit | DEPUTY CLERK |
|------|------|-------|------|--------|--------------|
| 3-19 20 07 | | X | | | |
| 3-20-07 | | | | | |